[No. 10930.   Department One.   March 14, 1913.]

THE STATE OF WASHINGTON, *on the Relation of Marie Caffrey, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents*.[1]

SCHOOLS AND SCHOOL DISTRICTS—ORDERS OF SCHOOL BOARD—DISCHARGE OF TEACHER—APPEAL—DISQUALIFICATION OF SCHOOL SUPERINTENDENT—REVIEW BY COURTS. The superior court has jurisdiction of an action to review a decision of a board of school directors discharging a teacher, where the county superintendent of schools had disqualified himself from reviewing the decision on the appeal provided by law, by appearing at and dominating the school board meeting, demanding the teacher's resignation, and threatening her with cancellation of her certificate authorizing her to teach unless she resigned, and denying her any opportunity to be heard.

Certiorari to review a judgment of the superior court for King county, Dykeman, J., entered December 13, 1912, dismissing an action to review an order of a school directors' board, upon sustaining a demurrer to the complaint. Reversed.

*Dudley G. Wooten*, for relator.

*John F. Murphy* and *John P. Gallagher*, for respondents.

MOUNT, J.—This action was brought in the superior court of King county to review an order of the board of directors of school district No. 175, in that county, which order discharged the plaintiff as a teacher in the public schools. The trial court sustained a general demurrer to the complaint, and dismissed the action. Thereupon the relator sued out this writ to review that order of the superior court.

No question is raised as to the jurisdiction of this court to review the order in this manner, and we have concluded that the showing made in the petition is sufficient to confer jurisdiction upon this court. The question presented here is, Did the trial court have jurisdiction to review the order of

[1]Reported in 130 Pac. 747.

the board of school directors in discharging the relator as a teacher? The relator relies upon the allegations in her complaint to the effect, that she had entered into a contract with the board of directors to teach in said school district for the school year 1912-13, for the stipulated salary of $75 per month; that she was qualified and authorized to teach in this state, and that in April, 1912, she entered upon her duties under her contract and continued thereafter to perform the same; that, on November 4, 1912, a meeting of the board of directors was held in said school district; that Mr. Burrows, county superintendent of schools for King county, was present at said meeting and directed and dominated the proceedings thereof; that certain persons were permitted to make oral charges against the plaintiff; that said meeting was without notice to the plaintiff, and she was not permitted to be present or hear said charges and no record was made thereof; that after said charges had been made against her, Mr. Burrows,

"Said that she must resign, and upon plaintiff's replying that she would not resign under such circumstances, without being given an opportunity to know what she was charged with, and without being allowed to defend herself, or to have a fair and impartial trial, the said Burrows again announced that she must resign and that if she did not he would make the board of directors discharge her and would cancel her teacher's certificate. . . . That thereafter, to wit on November 8, 1912, another meeting of said board of directors was held, at which said Burrows was again present and directed and controlled all that was said and done; . . . that at said second meeting no further investigation or examination of witnesses or hearing of testimony was had, nor was plaintiff any further or differently advised and notified of the charges against her then as before described at the first meeting of November 4, but when said second meeting convened said Burrows demanded of plaintiff why she had not resigned, and again declared that if she did not resign he would have her discharged and cancel her certificate; that no record of any proceedings against the plaintiff was made or

kept; that on November 18, 1912, plaintiff was served with a copy of the resolution, as follows:

"At a regular meeting of the board of directors of school district No. 175, of King county, Washington, held at the Duwamish school on the 16th day of November, 1912, at 7:30 o'clock p. m., it appearing to the board of directors that it will be impossible to retain the services of Miss Marie Caffrey as a teacher, it having been first shown to the entire satisfaction of the board of directors by evidence introduced at two different meetings held for the purpose of making an investigation into the conduct of said Marie Caffrey, as teacher, one meeting being held on the 4th day of November, and the other on the 8th day of November, 1912, at the Duwamish school, and evidence having been introduced at said meetings to the effect that, together with other things, Miss Caffrey had been guilty of using improper language before the pupils toward the principal, and also of de-grading a pupil without the consent of or without consulting the principal. Therefore, in view of the above facts, it is resolved that the services of Miss Marie Caffrey be dispensed with, and that she is hereby discharged, said discharge to take effect on the 2nd day of December, 1912.

"O. G. Rosberg and
"P. P. Brandon,
"Directors of School District No. 175."

The complaint then alleges that the statements in the resolution to the effect that evidence was heard was false; that no evidence was offered to prove plaintiff guilty of using improper language to the principal, or that plaintiff had degraded a pupil without consent of the principal, and denies that she ever at any time or place committed either of said offenses. The complaint, after setting up other matters showing prejudice of the county school superintendent and that the order of discharge was without cause, proceeds:

"That by the law and rules governing school matters in the state of Washington, plaintiff had the right of appeal from any adverse decision of the said board of directors to the superintendent of schools in King county, who is the said Burrows, and from the latter, in case of his adverse judgment, to the superintendent of public instruction of the state

of Washington, with the period of thirty days in each in-
stance within which to prosecute her appeal; and in case of
an appeal to the county superintendent he is by law author-
ized to take evidence, summon witnesses and call for all rec-
ords affecting the case, but in case of an appeal to the super-
intendent of public instruction no new testimony can be in-
troduced or heard by him, but he must try and decide the
appeal upon the record already made;"

that the plaintiff's right of appeal in lawful order in this
case had been completely taken away because of the disquali-
fication of the county superintendent as aforesaid.

It is upon these and other allegations of like character
that the relator here insists that the lower court had juris-
diction to review the order of the board of school directors in
discharging the relator. The respondents insist that the su-
perior court had no jurisdiction because the jurisdiction to try
this class of cases is vested by law in the county school super-
intendent, from whom an appeal lies to the superintendent of
public instruction. *Van Dyke v. School District No. 77*, 43
Wash. 235, 86 Pac. 402, is relied upon to sustain this posi-
tion. This case no doubt would be in point where the county
superintendent was not disqualified by active participation
in the controversy; but in this case it is alleged that the coun-
ty superintendent dominated the school board and took an
active interest in the controversy, and without giving the
plaintiff an opportunity to be heard or to know the charges
against her, and without any record of the proceedings be-
ing made, demanded her resignation and threatened her with
discharge and to cancel her certificate authorizing her to
teach in the state, unless she resigned. She demanded that
she be informed of the charges against her and the right to
be heard. These demands were denied, and she was dis-
charged without cause. To say that she must now appeal to
the officer who dominated these proceedings and made, or at
least directed, the order, is to say that the county superin-
tendent may be the accuser and the judge in the same con-
troversy. Neither the statutes nor the decision in the *Van*

*Dyke* case, *supra*, was intended to bring about that result. In *State ex rel. Barnard v. Board of Education*, 19 Wash. 8, 52 Pac. 317, 67 Am. St. 706, 40 L. R. A. 317, this court, speaking through Judge Dunbar, said upon this point:

"To compel a litigant to submit to a judge who has already confessedly prejudged him, and who is candid enough to announce his decision in advance, and insist that he will adhere to it, no matter what the evidence may be, would be so farcical and manifestly wrong that it seems to us that the idea must necessarily be excluded by the very expression 'administration of justice.' "

The allegations in the complaint were sufficient to show that the county superintendent was utterly disqualified to hear an appeal in this case, and since there is no provision for any other person to hear it, the plaintiff is without remedy except in the courts. The superior court, therefore, had jurisdiction to review the order of the board of directors, and determine whether the order was made with or without cause.

The judgment of the trial court dismissing the complaint is therefore reversed, with directions to overrule the demurrer.

CROW, C. J., CHADWICK, GOSE, and PARKER, JJ., concur.